**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: Mark Jackson | ) | 13-43846 |
| | ) | |
| | ) | |
| Debtor, | ) | Judge Deborah L. Thorne |
| | ) | |

*Response to Order for Status Hearing*

COMES NOW Marilyn O. Marshall, Standing Trustee, and in response to this Honorable Court's Order for Status Hearing entered on this Court's docket on August 20, 2019, states as follows:

    **1.    A list of all funds paid in the case to date, including the amounts paid and the dates on which each payment was made.**

    See attached Exhibit A: Financial Detail: Receipt History dated September 9, 2019.

    **2.    A list of all allowed claims and the amount paid to date on each claim.**

    See attached as Exhibit B: List of allowed claims.

    **3.    A summary of the commission paid to date and an estimate of the commission to be paid to the Chapter 13 Trustee if this case is concluded on or before September 30, 2019.**

    See attached as Exhibit C: List of Trustee administrative fees totaling $2,746.33. The primary federal statute regarding the standing trustee percentage fee is 28 U.S.C. §586(e). Subsection (e)(1) provides that the Attorney General sets both maximum annual compensation for standing trustees, and a percentage fee for standing trustees not to exceed 10 percent. Subsection (e)(2) sets out how the percentage fee is collected:

> Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

The amount of the fee to be paid if the case is concluded on or before September 30, 2019 would be 3.5% of any funds received. The payoff balance of $6,798.44 would incur an administrative fee of $246.58.

**4.    Any other information either party believes will assist the court in understanding the total amount to be paid and any deficiencies that exist.**

The Plan in this case was confirmed on April 10, 2014. Docket 36. The debtor's confirmed plan provided for the debtor to pay $1,075.00 per month for a term of 60 months. Docket 29. This created a plan amount of payments to be made to creditors in the amount of $64,500.00. The plan provided that the creditors receive "not less than 20% of their allowed claims," making this plan a minimum percentage pot plan. Judge Goldgar recently explained the difference between a "pot plan" and a "percentage plan" in the case of *In re Begoun*, stating:

> A percentage plan defines "what percentage of its claim each general unsecured creditor will receive without stating an exact dollar amount the debtor must pay into the plan until all claims are approved." In re Golek, 308 B.R. 332, 335 (Bankr. N.D. Ill. 2004). A pot plan "fixes the amount the debtor must pay into the plan, leaving in question the percentage each general unsecured creditor will receive in payment of its claim until all claims are approved." Id.; see also In re Vastadore, 516 B.R. 772, 775 (Bankr. W.D. Pa. 2014) (stating that a "pot plan" is "a defined contribution plan where the amount paid by the debtor is fixed"); In re Dugan, No. 04-13818-SSM, 2008 WL 3876415, at *1 n.2 (Bankr. E.D. Va. Aug. 18, 2008) (noting that in pot plans "unsecured creditors, rather than being promised a specific percentage payment of their claims, share pro rata in the 'pot' that remains after payment of secured and priority claims"). In pot plans, consequently, the proposed dividend unsecured creditors will receive can and often does change. See Vastadore, 516 B.R. at 775 (noting that "the dividend paid to creditors can vary based upon the universe of claims filed and allowed"); Dugan, 2008 WL3876415, at *1 ("The very nature of a pot plan is that the estimated distribution is only an estimate—neither a floor nor a ceiling—and unsecured creditors have a right to expect that they will share in the upside if fewer claims are filed than expected."); Golek, 308 B.R. at 335.

*In re Begoun*, 13 B 27604, J. Goldgar, unpublished opinion.

On November 7, 2016, an Order was entered allowing the settlement of a lawsuit in which the Debtor was a plaintiff. The debtor's portion of the settlement was to be paid as an additional plan payment. See Docket 59. This amount was $5,414.35. This additional plan payment increased the plan amount from $64,500 to $69,914.35. The debtor has not paid this amount in full.

On April 11, 2018, an Order was entered modifying the plan. The order increased the plan payments to $1,339.00 and deferred the existing default (at that time $3,525.09). On April 11, 2018, the plan was in its 52nd month, leaving 8 payments to be made at $1,339.00. This Order increased the pot as follows: $1,075.00 x 52 + $1,339.00 x 8 = $66,612.00 + $5,414.35 (lawsuit proceeds) = $72,026.35. As of September 6, 2019, the debtor has made payments of $65,227.91, leaving a pay off balance of $6,798.44.

The Order of April 11, 2018 increased the plan payment amount and deferred the default. It does not state that the pot shall remain the same notwithstanding the increased plan payment amount. Even if the pot had not changed with the Order, the case is still not paid off. In that case, the plan payment calculation would be $1,075.00 x 60 = $64,500.00 + $5,414.35 (lawsuit proceeds) = $69,914.35. The debtor has paid in $65,227.91, leaving a pay off balance under that calculation of $4,686.44. The last plan payment received by the Trustee was on February 15, 2019 in the amount of $4,000.00, which was shortly after the prior Motion to Dismiss for Failure to Make Plan Payments (docket 76) was withdrawn.

3

WHERFORE, Marilyn O. Marshall, Chapter 13 Trustee, prays that this Court dismiss this case, and for any other relief that this Court deems just.

    Respectfully submitted,

    /s/ A. Stewart Chapman
    for Marilyn O Marshall, Trustee

Office of the Chapter 13 Trustee
224 South Michigan Ave.
Suite 800
Chicago, Illinois 60604
(312)431-1300